[No. A131651. First Dist., Div. Four. Mar. 20, 2012.]

NO WETLANDS LANDFILL EXPANSION et al., Plaintiffs and Respondents, v.
COUNTY OF MARIN et al., Defendants and Appellants;
REDWOOD LANDFILL, INC., Real Party in Interest and Appellant.

574

## COUNSEL

Patrick K. Faulkner, County Counsel, Nancy S. Grisham, Deputy County Counsel; Shute, Mihaly & Weinberger and Ellen J. Garber for Defendants and Appellants.

Soluri Meserve, Osha R. Meserve and Patrick M. Soluri for Real Party in Interest and Appellant.

Pollock & James, Mark S. Pollock; Law Offices of Brent J. Newell and Brent J. Newell for Plaintiff and Respondent No Wetlands Landfill Expansion.

## OPINION

**SEPULVEDA, J.**[*]—A public agency issued a permit for expansion of a landfill after considering and certifying as complete an environmental impact report (EIR) prepared pursuant to the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.; hereafter CEQA).[1] Community organizations filed a petition for a writ of mandate. The organizations claimed a right to appeal the EIR certification to the county board of supervisors, and also claimed that the EIR was inadequate and should be adjudged so by the superior court. The superior court resolved the first issue alone and issued a judgment directing the county board of supervisors to hear an administrative appeal of the EIR certification.

We reverse the judgment. Approval of the landfill permit, and certification of the EIR for that approval, is a power vested in a local enforcement agency not the county itself. The local enforcement agency is a distinct legal entity from the county. The county board of supervisors has no authority to approve or disapprove the project at issue and thus is not a "decisionmaking body" empowered to hear plaintiffs' administrative appeal. (§ 21151, subd. (c); see

---

[*]Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All statutory references are to the Public Resources Code unless otherwise indicated.

Guidelines, §§ 15090, subd. (b), 15356.)[2] Plaintiffs' challenge to the adequacy of the EIR lies in the superior court, to which we remand this case. (§ 21167, subd. (c).)

## I. FACTS

Redwood Landfill, Inc. (RLI), operates the Redwood Landfill on a 420-acre site north of Novato on the Petaluma River in Marin County. The landfill began receiving waste in 1958, and handles the majority of Marin County's solid waste. RLI has a solid waste facilities (SWF) permit issued pursuant to the California Integrated Waste Management Act of 1989 (Waste Act). (§ 40000 et seq.) "[T]he responsibility for solid waste management is a shared responsibility between the state and local governments." (§ 40001, subd. (a).) California's Department of Resources Recycling and Recovery (CalRecycle) generally enforces the Waste Act but may also certify a local government agency as the enforcement agency in a given community.[3] (§§ 40110, 43200 et seq.) In 1992, CalRecycle certified Marin County Environmental Health Services (Marin EHS) as the local enforcement agency for Marin County. In 1995, Marin EHS issued an SWF permit to RLI, with the concurrence of CalRecycle. In 1999, RLI filed an application with Marin EHS to revise the landfill's SWF permit, which is the subject of this litigation. RLI's application seeks operational changes and expansion of the landfill's capacity. RLI also has a conditional use permit for operation of the landfill that was issued by Marin County in 1958. The use permit is broadly written and contains no expiration date. RLI has not applied for any change to its use permit, only its SWF permit.

Issuance of an SWF permit is a discretionary decision by a public agency implicating CEQA, which requires environmental review of both public projects and public agency approval of private projects. (§§ 21000, subd. (g), 21001.1, 21080, subd. (a).) Marin EHS, as the public agency with principal responsibility for issuing the requested SWF permit, assumed the role of lead agency under CEQA. (Guidelines, § 15367.) An initial study concluded that substantial changes were proposed that had not been addressed in a prior EIR from 1995, and this required a subsequent EIR. (Guidelines, § 15162, subd. (a).) A draft EIR was completed in 2003, and the final EIR in 2005. The final EIR presented a project redesign as a mitigated alternative, which RLI accepted. The final EIR was twice amended and the process finally completed

---

[2] "Guidelines" refers to the Guidelines for Implementation of CEQA, which are found in California Code of Regulations, title 14, section 15000 et sequitur. All subsequent regulatory citations to the Guidelines are to title 14 of the Code of Regulations.

[3] Other state agencies enforced the Waste Act in early years but, for simplicity, we use CalRecycle to encompass all predecessor state agencies responsible for enforcing the Waste Act.

in May 2008. Pursuant to Marin County guidelines, the Marin County Planning Commission, "as the Body with the greatest expertise for CEQA environmental review," reviewed the EIR and recommended to the "decision making body"—here, Marin EHS—certification of the EIR. In June 2008, Marin EHS certified the final EIR second amendment.

Plaintiff No Wetlands Landfill Expansion (NWLE), an association of local residents, claimed a right to appeal the Marin EHS certification to the Marin County Board of Supervisors (Board of Supervisors), and filed a petition to do so in June 2008. Plaintiff environmental groups Sustainability, Parks, Recycling and Wildlife Legal Defense Fund (SPRWLDF) and The Northern California Recycling Association (NCRA) joined in the petition for appeal. Marin county counsel advised plaintiffs that Marin EHS was acting as the designated representative of CalRecycle under the Waste Act, not the County of Marin, and thus no appeal to the Board of Supervisors was available. County counsel also stated that "appeal of a CEQA determination is not timely until after action on the underlying project is taken" and "[t]he underlying project here would be action on the anticipated proposed revision of the Solid Waste Facility Permit, which action has not yet occurred."

Meanwhile, action on the proposed SWF permit proceeded. Marin EHS deemed the application complete in October 2008 and found that the permit was consistent with state standards for solid waste facilities. (§ 44010.) Marin EHS provided CalRecycle with a copy of the proposed permit containing the terms and conditions Marin EHS proposed to establish. (§ 44007.) In November 2008, plaintiffs SPRWLDF and NCRA petitioned Marin EHS for an administrative review hearing under the Waste Act to challenge Marin EHS's recommended issuance of the SWF permit. (§ 44307.) Marin EHS scheduled a hearing. Meanwhile, after public hearing and deliberations, CalRecycle concurred in issuance of the SWF permit. (§ 44009.) Marin EHS was now authorized to issue the SWF permit and did so in December 2008. (§ 44014, subd. (a).) Plaintiffs SPRWLDF and NCRA withdrew their petition for an administrative hearing.

In January 2009, plaintiffs NWLE, SPRWLDF, and NCRA filed in the superior court a petition for a writ of mandate alleging violations of CEQA and local land use law. (Code Civ. Proc., §§ 1085, 1094.5.) Plaintiffs sued Marin County, the Board of Supervisors, and Marin County agencies including Marin EHS and one of its officers. In June 2010, plaintiffs filed their opening brief. Plaintiffs argued that defendants violated CEQA in refusing their June 2008 petition for appeal to the Board of Supervisors that challenged Marin EHS's certification of the EIR. Plaintiffs relied upon a CEQA provision stating that, "[i]f a nonelected decisionmaking body of a local lead agency certifies an environmental impact report . . . that certification . . . may

be appealed to the agency's elected decisionmaking body, if any." (§ 21151, subd. (c).) Effectively, plaintiffs asserted that the Board of Supervisors was Marin EHS's elected decisionmaking body and thus should review Marin EHS's EIR certification. Plaintiffs also claimed that the certified EIR failed to adequately analyze numerous environmental impacts from an expanded landfill.

Defendants responded that there was no appeal to the Board of Supervisors because Marin EHS was acting as the designated representative of CalRecycle under the Waste Act, not the County of Marin. Marin EHS is an entity distinct from the County of Marin, defendants argued, and does not have an elected decisionmaking body to hear an appeal following Marin EHS's certification of an EIR. The remedy for individuals dissatisfied with an EIR certified by Marin EHS is an immediate writ of mandate. (§ 21167 et seq.) Defendants noted that plaintiffs also had, as an additional remedy, an administrative challenge to the SWF permit under Waste Act provisions, which they abandoned. (§§ 44307, 45030.) Defendants also defended the EIR on its merits, contending that it fully assessed the environmental impacts of the project.

In October 2010, the trial court issued an order granting plaintiffs' petition for a writ of mandate on the cause of action alleging a CEQA violation for refusing appeal of the EIR certification to the Board of Supervisors. (§ 21151, subd. (c).) The court did not address plaintiffs' claims that the EIR is inadequate, finding that those claims could be "rendered moot by subsequent actions by the Board of Supervisors, which could include EIR revisions." The court denied defendants' motion for a new trial. Judgment was issued in March 2011. The court ordered defendants to vacate certification of the EIR and issuance of the SWF permit and to allow an administrative appeal of Marin EHS's certification of the EIR to the Board of Supervisors. Defendants appealed the judgment to this court.

## II. DISCUSSION

The question presented on appeal is a narrow one: is Marin EHS's certification of an EIR for issuance of an SWF permit appealable to the Board of Supervisors? The answer is no. The source of the answer lies in the regulatory structure created by the Waste Act and the Waste Act's intersection with CEQA. That regulatory structure reveals that approval of an SWF permit, and certification of the EIR for that approval, is a power vested in Marin EHS as a distinct local enforcement agency and is not a power vested in the county itself.

A. *The Waste Act*

■ The Waste Act requires CalRecycle to "prepare and adopt certification regulations for local enforcement agencies." (§ 43200, subd. (a).) A county's board of supervisors may designate a local enforcement agency under the Waste Act to inspect, issue permits, and enforce regulations at solid waste landfills. (§§ 43200, 43203, subd. (a).) The designated local enforcement agency must meet standards for "[t]echnical expertise" and "[a]dequacy of staff resources" before it may be certified by CalRecycle to assume duties under the Waste Act. (§ 43200, subds. (a)(1), (2)(A), (b)(1).) Technical expertise is essential. Regulations promulgated under the Waste Act state that the local enforcement agency "shall have one or more full time staff members dedicated solely for solid waste issues" and staff "shall be composed of at least one registered environmental health specialist." (Cal. Code Regs., tit. 14, § 18072, subd. (a).) CalRecycle strictly enforces these requirements. "No enforcement agency may exercise the powers and duties of an enforcement agency until the designation is approved . . ." by CalRecycle. (§ 43204.) If no designation is approved, CalRecycle "shall be the enforcement agency and shall assume all the powers and duties of an enforcement agency" under the Waste Act. (§ 43205, subd. (a).) If a local enforcement agency is certified, Waste Act regulations specify that "[p]erformance of permitting, inspection, and enforcement duties and responsibilities of comprehensive solid waste enforcement issues shall reside solely within" the local enforcement agency. (Cal. Code Regs., tit. 14, § 18072, subd. (a).)

■ Landfill applications are submitted to the local enforcement agency. The application must show compliance with CEQA. (Cal. Code Regs., tit. 27, § 21570, subd. (f)(3).) The local enforcement agency evaluates the application to determine if "the proposed solid waste facilities permit is consistent with and is supported by existing CEQA analysis . . ." (*id.*, § 21650, subd. (g)(7)) and meets state regulations adopted by CalRecycle (Pub. Resources Code, § 44008, subd. (b)). CalRecycle has adopted comprehensive regulations governing solid waste facilities. (E.g., Cal. Code Regs., tit. 27, §§ 20510–21200.) ■ The local enforcement agency may impose terms and conditions on the SWF permit, as necessary to protect public health and the environment. (§ 44012.) The local enforcement agency is not, however, authorized to issue an SWF permit under its own power. The local enforcement agency must submit the proposed SWF to CalRecycle for the state agency's consideration. (§§ 44007, 44009, subd. (a)(1).) CalRecycle reviews the proposed SWF permit for consistency with state standards. (§ 44009, subd. (a)(2).) CalRecycle then either objects or concurs. (§ 44009, subd. (a)(1).) The local enforcement agency may issue an SWF permit only with CalRecycle's concurrence. (§ 44014, subd. (a).)

■ The issuance of an SWF permit is subject to administrative review. (§ 44307.) A member of the public may request the local enforcement agency to hold a hearing to consider claims that the agency failed "to act as required by law or regulation." (§ 44307; see *Sustainability of Parks, Recycling & Wildlife Legal Defense Fund v. County of Solano Dept. of Resource Management* (2008) 167 Cal.App.4th 1350, 1360–1363 [84 Cal.Rptr.3d 889].) The hearing is heard by a hearing panel or officer appointed by the local " 'governing body' " (the Board of Supervisors here). (§ 40150; see § 44308.) The decision from this hearing may be appealed to CalRecycle (§ 45030, subd. (a)) and an individual dissatisfied with CalRecycle's decision "may file with the superior court a petition for a writ of mandate for review thereof." (§ 45040, subd. (a).)

The Waste Act review process is arguably permissive, rather than a mandatory administrative appeal that is a precondition to judicial review. (See *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 510 [87 Cal.Rptr.2d 702, 981 P.2d 543] ["the right to petition for judicial review of a final decision of an administrative agency is not necessarily affected by the party's failure to file a request for reconsideration or rehearing before that agency"].) Defendants have conceded as much. No defense based on an asserted failure to exhaust administrative remedies under the Waste Act was raised in the trial court or on appeal.

■ For our purposes, the important thing to notice in the Waste Act's structure is the limited role played by the local governing body, which is the Board of Supervisors here. The Board of Supervisors does not evaluate the SWF application, impose terms, or recommend issuance or denial of the SWF permit. The Board of Supervisors may appoint a hearing panel or officer in the event of an administrative appeal, and may even appoint three of its own members as the panel but, significantly, the Board of Supervisors as a whole does not itself act as the hearing panel. (§ 44308.) Nor is the local hearing panel, however constituted, the last available venue for administrative review. The local hearing panel's decision may be appealed to CalRecycle as the final administrative arbiter on an SWF permit. (§ 45030, subd. (a).)

## B. *CEQA*

■ We now consider the Waste Act's intersection with CEQA. As noted earlier, issuance of an SWF permit is a discretionary decision by a public agency implicating CEQA, which requires environmental review of both public projects and public agency approval of private projects. (§§ 21000, subd. (g), 21001.1, 21080, subd. (a).) Marin EHS, as the public agency with responsibility for issuing the requested SWF permit, assumed the role of lead agency under CEQA. The term "lead agency" is defined as "the public

agency which has the principal responsibility for carrying out or approving a project." (Guidelines, § 15367.) "Where two or more public agencies will be involved with a project, the determination of which agency will be the lead agency" is governed by specified criteria. (Guidelines, § 15051.) For private projects, "the lead agency shall be the public agency with the greatest responsibility for supervising or approving the project as a whole." (Guidelines, § 15051, subd. (b).) Most land use projects require issuance of a conditional use permit by a city or county and thus "[t]he lead agency will normally be the agency with general governmental powers, such as a city or county, rather than an agency with a single or limited purpose . . . ." (Guidelines, § 15051, subd. (b)(1).) But Marin County is not the lead agency here. RLI has an existing conditional use permit for operation of the landfill that was issued by Marin County in 1958, and that use permit remains effective. Therefore, Marin EHS, as the public agency with principal responsibility for issuing the requested SWF permit, assumed the role of lead agency under CEQA, and its lead agency standing is unquestioned on appeal.[4]

█ As the lead agency, Marin EHS was responsible for preparing an EIR, and certifying that the final EIR was compliant with CEQA. (§ 21151, subd. (a); Guidelines, §§ 15050, subd. (a), 15089, subd. (a), 15090, subd. (a).) Guidelines section 15000 et sequitur, "permit staff members of the lead agency to perform certain CEQA-related tasks, including conducting initial studies and responding to public comments, [but] other tasks are deemed nondelegable and reserved exclusively for the agency's decisionmaking body, including '[r]eviewing and considering a final EIR' and making certain findings." (*California Oak Foundation v. Regents of University of California* (2010) 188 Cal.App.4th 227, 289 [115 Cal.Rptr.3d 631], quoting Guidelines, § 15025, subd. (b).) "Under CEQA, the 'decisionmaking body' is 'any person or group of people within a public agency permitted by law to approve or disapprove the project at issue.' " (*California Oak Foundation, supra*, at p. 289, quoting Guidelines, § 15356.) It is well settled that the decisionmaking body may be one or more individuals in the public agency—it need not be composed of the agency as a whole. (*California Oak Foundation, supra*, at pp. 288–292.) Here, the decisionmaking body was an individual: Philip Smith, Marin EHS deputy director "in his capacity as the Director of the

---

[4] Plaintiffs allege that county land use approvals apart from a conditional use permit were required, and neglected. Specifically, plaintiffs allege in their ninth cause of action that Marin County failed to make mandated general plan consistency findings. Whatever the merits of that claim, the fact remains that Marin EHS, not Marin County, is the undisputed lead agency under CEQA charged with considering and certifying the EIR. If Marin County were required to exercise discretionary authority in approving the landfill expansion as consistent with the general plan, it would do so as a separate "responsible agency" that considers the EIR prepared and certified by Marin EHS as the lead agency. (Guidelines, § 15096, subd. (a); see § 15381.)

Marin County Local Enforcement Agency designated by" CalRecycle, as stated in the resolution certifying the EIR.

CEQA furthers provides: "If a nonelected decisionmaking body of a local lead agency certifies an environmental impact report . . . that certification . . . may be appealed to the agency's elected decisionmaking body, if any." (§ 21151, subd. (c).) CEQA Guidelines expound on this rule: "When an EIR is certified by a non-elected decision-making body within a local lead agency, that certification may be appealed to the local lead agency's elected decision-making body, if one exists. For example, certification of an EIR for a tentative subdivision map by a city's planning commission may be appealed to the city council. Each local lead agency shall provide for such appeals." (Guidelines, § 15090, subd. (b).)

C. *Marin EHS's certification of an EIR for issuance of an SWF permit is not appealable to the Board of Supervisors*

Plaintiffs successfully argued in the trial court that the Board of Supervisors violated CEQA by refusing to hear an appeal of Marin EHS's EIR certification underlying the SWF permit. The argument is mistaken. Marin EHS is the local enforcement agency under the Waste Act and the lead agency under CEQA. Marin EHS is a separate and distinct legal entity from Marin County. Marin EHS's decisionmaking body is its deputy director. Marin EHS has no elected decisionmaking body. While the Board of Supervisors is an elected governing body, it is not a *decisionmaking* body of Marin EHS. As noted above CEQA provides: "If a nonelected decisionmaking body of a local lead agency certifies an environmental impact report . . . that certification . . . may be appealed to the agency's *elected decisionmaking body*, if any." (§ 21151, subd. (c), italics added; accord, Guidelines, § 15090, subd. (b).) CEQA regulations define a decisionmaking body as "any person or group of people within a public agency permitted by law to approve or disapprove the project at issue." (Guidelines, § 15356.) The Board of Supervisors has no power to approve or disapprove the project at issue and thus is not an elected decisionmaking body empowered to hear plaintiffs' appeal.

 Plaintiffs' briefing on appeal implicitly acknowledges the Board of Supervisors' lack of authority on the project in stating that an appeal to the Board of Supervisors would permit the Board of Supervisors to *"request* changes to the EIR," rather than stating that an appeal would permit the Board of Supervisors to *demand* changes and to vacate certification of the EIR and approval of the SWF permit until those changes are implemented. (Italics added.) CEQA does not provide an administrative appeal for the purpose of requesting changes. An administrative appeal requires "[t]he decisionmaking body to which an appeal has been made" to consider the EIR,

to balance the benefits of a project against its environmental risks when determining whether to approve the project, and to make affirmative findings supported by substantial evidence that the project's environmental effects have been mitigated or that overriding considerations justify approving the project despite unavoidable adverse environmental effects. (Guidelines, § 15185, subd. (b); see § 15091, subds. (a)(1), (b), 15093.) Where an administrative appeal lies under CEQA, a party challenging the EIR *must* pursue that appeal to the elected decisionmaking body or is barred from doing so in court. (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417–418 [194 Cal.Rptr. 357, 668 P.2d 664].) It is clear that the Board of Supervisors here does not have these decisionmaking functions on an SWF permit or certification of the EIR and thus does not have appellate authority.

Plaintiffs' reliance upon *Vedanta Society of So. California v. California Quartet, Ltd.* (2000) 84 Cal.App.4th 517 [100 Cal.Rptr.2d 889] is misplaced. *Vedanta* held that a majority of a county's elected board of supervisors had to decide the appeal of an unelected planning commission's certification of a housing development EIR. (*Id.* at pp. 525–530.) Certification of an EIR by a county's planning commission is distinct from certification of an EIR by a designated local enforcement agency under the Waste Act. It will be recalled that the key point is that certification of an EIR "may be appealed to the agency's elected decisionmaking body, if any." (§ 21151, subd. (c).) In *Vedanta*, the board of supervisors was the planning commission's elected decisionmaking body with "ultimate responsibility for approving an EIR." (*Vedanta, supra*, at p. 526.) The Board of Supervisors here does not have ultimate responsibility for approving an EIR on an SWF permit under the Waste Act.

The participation of the Marin County Planning Commission in reviewing the EIR does not alter this analysis. Marin County Environmental Impact Review Guidelines, which set out local procedures for implementation of CEQA, provide that the Marin County Planning Commission, "as the Body with the greatest expertise for CEQA environmental review, shall review and make a recommendation to the County decision making body as to certification on all EIRs, excepting those projects reviewed exclusively by the Board of Supervisors." Under these local guidelines, the "decision making body"—and thus "the certifying body for EIRs"—may be the planning commission, the board of supervisors, or "another County decision making body . . . responsible for the project." Here, the decisionmaking body was Marin EHS, not the planning commission whose function was advisory. The planning commission recommended that Marin EHS certify the EIR as adequate and complete in compliance with CEQA, but the actual decision to certify the EIR rested with Marin EHS.

Plaintiffs argue that defendants, having utilized the local EIR guidelines during the environmental review process, were required to comply with guideline appeal procedures that require review of CEQA determinations by the Board of Supervisors. The appeal provision of the local guidelines does provide support for this position but the guidelines, when read as a whole, do not compel the conclusion that the Board of Supervisors must review CEQA determinations made by an independent decisionmaking body like Marin EHS. The appeal provision in the local guidelines state that appeal of CEQA determinations "shall be considered by the Board of Supervisors or other relevant Lead County Department 'final' decision making body. . . . The appeal shall be considered and acted upon by the relevant decision making body . . . . The decision of the relevant body shall be final, and shall not be further appealable to the Board of Supervisors if they are not the relevant 'final' decision making body. *However, if the final decision is not made by an elected body, certification of the EIR can be appealed to the Board of Supervisors.*" (Italics added.) This provision appears to be a local rule implementing the CEQA provision discussed at length above: "If a non-elected decisionmaking body of a local lead agency certifies an environmental impact report . . . that certification . . . may be appealed to the agency's elected decisionmaking body, if any." (§ 21151, subd. (c).) The local rule fails to anticipate the situation presented here, where the final decision is made by a nonelected body but the Board of Supervisors is not a decisionmaking body on the project with the right of final approval. The rule was explicitly written for appeals "[a]fter a County permit or entitlement has been granted for a private project," not for appeals after an SWF permit has been granted by a local enforcement agency with independent legal existence operating within the county bureaucracy. The rule is inapplicable to the CEQA determination challenged here.

█ In summary, Marin EHS's EIR certification is not subject to appeal to the Board of Supervisors, which is not a decisionmaking body with authority over the SWF permit or the certification of the EIR prepared for Marin EHS's consideration as the lead agency on the project. (§ 21151, subd. (c).) The trial court erred in directing the Board of Supervisors to hear an administrative appeal of the EIR certification.

Our conclusion is consistent with a guidance letter written by CalRecycle Chief Counsel Elliot Block, who opines that Marin EHS's EIR approval is not appealable to the Board of Supervisors. Defendants proffered the letter on their motion for new trial, and the letter has driven the parties into a heated debate about its admissibility and relevance. The trial court ruled that the letter is not judicially noticeable as an official act and barred it as extra-record evidence. We need not disturb that ruling. The disposition of this appeal is founded on a plain reading of the relevant statutes and regulations. No recourse to CalRecycle's opinion letter is necessary.

As a final point, we refuse defendants' request that we address plaintiffs' causes of action challenging the adequacy of the EIR. The trial court did not reach these issues and limited its ruling to a single cause of action concerning the availability of an administrative appeal. Plaintiffs' remaining causes of action challenging the adequacy of the EIR are properly committed to the trial court for its resolution.

## III. DISPOSITION

The judgment granting the petition for a writ of mandate on the eighth cause of action alleging failure to allow appeal of the EIR certification to the Board of Supervisors is reversed. The matter is remanded to the trial court for consideration of the remaining causes of action and further proceedings consistent with this opinion.

Reardon, Acting P. J., and Rivera, J., concurred.